In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1426

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE F. TAPIA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08 CR 50023—**Frederick J. Kapala**, *Judge*.

ARGUED APRIL 12, 2010—DECIDED JULY 6, 2010

Before CUDAHY, POSNER, and EVANS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Jose Tapia, a member of the
Latin Counts street gang, was arrested at his home on
May 19, 2008, after his estranged wife reported him to the
police for battery and informed a detective of his involve-
ment in a gang shooting. During the arrest, officers per-
formed a "protective sweep," which entailed checking
the basement and downstairs bathroom for individuals
who may have posed a threat. The sweep revealed a

handgun, which was subsequently found to have been used in an attack on a rival gang's house. Tapia was convicted of being a felon in possession of a firearm. Having determined that the defendant had used the firearm in connection with another felony, the district court increased his base offense level by four levels pursuant to U.S.S.G. § 2K2.1(b)(6). Tapia was sentenced to 120 months' imprisonment.

On appeal, Tapia contends that the firearm was discovered pursuant to an unconstitutional search, since the sweep incident to his arrest was unreasonable. He also argues that the district court committed reversible procedural errors by failing: (1) to explain why it credited one contradictory statement over another and (2) to identify the elements of the other offense or to explain how the government's evidence supported those elements. Finally, Tapia submits that the district court abused its discretion in relying upon unreliable statements when finding that the defendant had used the weapon in connection with another felony offense.

Since the police had ample evidence reasonably to believe that armed gang members may have been in the house, and because a sweep of the basement and attendant bathroom was reasonable, the manner in which the firearm was discovered was constitutional. Although the process by which the district court weighed the inculpatory and exculpatory evidence of Tapia's involvement in the shooting was imperfect, it was sufficient. In addition, the elements of that other offense were clear and the court's explanation why the evidence

revealed the defendant's involvement in the shooting was similarly adequate. For these reasons and the reasons that follow, we affirm.

## I. BACKGROUND

Jose Tapia, a convicted felon and member of the Latin Counts street gang, was arrested at his home at 129 Ridgeview Avenue in Rockford, Illinois, on May 19, 2008. His arrest followed from the decision of his estranged wife, Verta Rodriguez, to file a battery complaint against him on May 3, 2008. Tapia, she alleged, had bitten her upper arm. While at the police station, Rodriguez also spoke with Detective Randall Peraza, an officer in the gang unit. Peraza had already been investigating Tapia, a member of the Latin Counts street gang, in relation for a number of gang-related shootings. During their discussion, the defendant's wife informed Peraza that Tapia had been involved in a shooting at 809 South Greenview Avenue (the "Greenview" shooting), which she explained had occurred in retaliation for the shootings of two Latin Count gang members at 716 Loomis. Rodriguez also informed the detective that Tapia had been present at a meeting just prior to the Greenview shooting where one of his associates, Jacob Larsen, had distributed guns and discussed the retaliatory nature of the shooting. Finally, she told him that Tapia had been living at 129 Ridgeview, a location where Latin Count gang members hung out and stored drugs, guns and other potential evidence.

On the day that Tapia was arrested, eight police officers armed with an arrest, but not a search, warrant were

sent to 129 Ridgeview. Upon arrival, the officers noticed a Lincoln Navigator, which they had not noticed during prior surveillance of the residence, parked in the front of the house. The police were aware that one of Tapia's associates, also a gang member, owned a Navigator. After a few minutes of knocking at the front door, Deputy Daniel Freedlund, who was situated at the front of the house, notified the other officers that someone was coming out of the basement. Moments later, having walked out of the basement stairwell and through the empty living room, Tapia opened the front door. The police then arrested Tapia without incident and performed a protective sweep of the rest of the residence, including the basement. During the sweep of the basement bathroom, Officer Nick Cunningham spotted a gun on top of some heating ducts approximately seven-and-a-half feet from the ground. Police later returned to 129 Ridgeview with a warrant to conduct a complete search of the house.

Due to the discovery of the gun, the government charged Tapia with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Tapia moved to suppress evidence of the gun. At the suppression hearing, Tapia argued that the protective sweep of the basement was unreasonable and in violation of the Fourth Amendment. He also argued that the handgun was not in plain view, making a search above the ductwork outside the scope of a protective sweep.

Both Peraza and Cunningham offered testimony to support the validity of the protective sweep. Cunningham testified that the sweep was performed because the

officers knew "[t]hat he was an active member of the Latin Counts street gang, that he was a higher ranking member within the organization for Rockford, that he was suspected of being involved in narcotics dealing, and that the residence itself was being used as a place where other gang members would gather and have meetings, as well as store weapons and narcotics." Cunningham also testified that he entered into the bathroom to see if it led to a connecting room. Upon leaving, he spotted the handle of the gun protruding from the ceiling ductwork. Peraza's testimony was similar, but he also noted that members of the Latin Counts had been involved in shootings within the County. Both officers agreed that the protective sweep was brief.

The district court denied Tapia's motion to suppress the gun as evidence. The court concluded that the officers had reason to believe that other Latin Count members could be present at 129 Ridgeview and pose a danger to the arresting officers. The court supported this conclusion based on six facts:

(1) the defendant was on parole for a 2005 unlawful use of weapons conviction;

(2) the defendant was a leader of the Rockford Latin Counts;

(3) the defendant was living in the basement of a residence with other Latin Counts;

(4) the Latin Counts and Latin Kings had recently been shooting at each other, including the drive-by shootings on Loomis Street and Greenview Avenue;

(5) the defendant may have been involved in the Greenview Avenue shooting, using a .45-caliber handgun; and

(6) there was a Lincoln Navigator in the driveway big enough to hold five or six people.

Considering these facts in combination with the officers' observations at 129 Ridgeview—the vacant first floor and the emergence of Tapia from the basement—the district court found that the officers had reason to believe that armed Latin Count gang members could be in the basement and, therefore, pose a threat to the officers carrying out the arrest. The district court also credited Detective Cunningham's statements regarding his discovery of the gun and found that the gun had been found in plain view while conducting a reasonable protective sweep of the basement.

On February 6, 2009, a sentencing hearing was held for Tapia's conviction on a single count of being a felon in possession of a firearm. At the sentencing hearing, the judge implemented a four-level sentence increase pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(b)(6). According to this provision, if Tapia used the firearm in the commission of another felony offense, he would be subject to an enhanced sentence. The government argued that the enhanced sentence was appropriate because Tapia had violated 720 ILL. COMP. STAT. 5/24-1.2(a)(1), by using the gun in the Greenview shooting. The government supported this contention with forensic evidence that linked the shell casings found at Greenview with the gun found at 129 Ridgeview. It also based

its contention on Peraza's testimony, which contained information about Rodriquez's and Clifford Gozdal's statements, as well as on Rodriguez's and Gozdal's statements. Tapia challenged the finding that he had used the gun found at 129 Ridgeview in the Greenview shooting by calling into question the adequacy and reliability of the evidence offered by the government to prove the crime used to augment his sentence.

More specifically, the forensic analysis of the 64 casings recovered from the Greenview house revealed that the gun found at 129 Ridgeview had been used to fire 13 rounds into the Greenview residence. Additionally, when the gun was found at 129 Ridgeview, it was loaded with the same brand of bullets as those that had been found at the Greenview residence. The gun was also linked to another shooting at 716 Blenheim Street.

Rodriquez's testimony was also used to link the gun found at 129 Ridgeview to the Greenview shooting. Prior to Tapia's arrest, Rodriquez had told Peraza that she had attended a meeting in April 2008 where Tapia and other Latin Count gang members discussed the Greenview shooting as retaliation for the 716 Loomis shooting. She claimed that Larsen had distributed guns at that meeting, which were then loaded before the gang members left the house. At the sentencing hearing, however, Rodriguez claimed that she did not remember where she was when Tapia and other Latin Count gang members discussed the Loomis/Greenveiw shootings. With respect to her earlier statements made to Peraza, Rodriguez claimed that she had "discussed activity that

I made up and that I have heard other people say, just repeating what I heard." Rodriguez was then given a perjury warning, after which she invoked her Fifth Amendment right not to testify.

Clifford Gozdal, who was arrested in an unrelated gang shooting, gave three statements to the authorities, two to Peraza and one to officers in Winona, Minnesota. These statements were also used to link the gun found at 129 Ridgeview to the Greenview shooting. Gozdal's first statement was to Peraza on May 9, 2008. Neither the Greenview shooting nor Tapia was discussed during this statement. During his second statement, conducted by Minnesota authorities on September 27, 2008, Gozdal stated that a man named "Midget" shot up a house in Rockford with an XD45 handgun. Gozdal did not say who, if anyone, was with Midget at that time. It is unclear whether Gozdal merely neglected to mention who was with Midget or whether he was asked specifically about Tapia and denied his presence at the shooting. Gozdal's third statement to Peraza in October 2008 implicated Tapia with Midget at the time of the Greenview shooting. This statement also included several specific details about the shooting including the number of shots fired into the Greenview house and the source of the handgun.

The last piece of evidence offered at the sentencing hearing was the testimony of Larsen, a man who allegedly distributed handguns at the meeting witnessed by Rodriguez. Larsen testified that he had not seen Tapia on the date of the alleged meeting, April 8, 2008, and that he did not bring a box of guns to anyone on that date.

The district court rejected Tapia's challenge to the four-level increase in his sentence, finding by a preponderance of the evidence that the defendant had used the gun found at 129 Ridgeview in the Greenview shooting, making the enhanced sentence reasonable. The court found it uncontroverted that the gun casings found at the scene of the Greenview shooting matched those of Tapia's handgun found at 129 Ridgeview. The court also found that Rodriguez's statements to Peraza were reliable, despite her later in-court contradiction of them, because much of the information was either already known to Peraza or later corroborated by him. With respect to Gozdal's statements, the district court found that the third statement made to Peraza was credible because of Gozdal's specificity in providing details and accurate identification of the type of guns used at the shootings.

Although the court failed to mention Larsen's testimony, which contradicted parts of Rodriguez's testimony, the court did state its reasons for finding Rodriguez's statements to Peraza to be credible. Thus, the district court found that the Government met is burden of showing that the four-level enhanced sentence applied.

## II. DISCUSSION

Tapia argues on appeal that the handgun found at 129 Ridgeview should be suppressed as evidence because the protective sweep was unreasonable and, therefore, a violation of his rights under the Fourth Amendment. Tapia also argues that the district court's decision to enhance his sentence was procedurally

unsound and not supported by the record. Additionally, Tapia argues that the government failed to prove the enhancement crime by a preponderance of the evidence. For the reasons that follow, we affirm the district court in all respects.

## A. The District Court Did Not Err in Determining the Protective Sweep Was Reasonable.

We review de novo a district court's conclusion that the police acted reasonably in performing a protective sweep. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). We review the district court's findings of fact for plain error. *Id*. Because the resolution of a motion to suppress is fact-dependent, we must give "particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990).

Since the police did not then possess a search warrant, they could not conduct a general search of Tapia's house at the time of his arrest. It is well established, however, that officers conducting an in-home arrest can perform a limited, protective sweep as long as they possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337 (1990). A protective sweep is not justified where there is a "mere inchoate and unparticularized suspicion or hunch" of danger. *Id*. at 332 (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). In order to limit the scope of a protective sweep, the search "may extend

only to a cursory inspection of those spaces where a person may be found" and may "last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335-36. In determining the reasonableness of the protective sweep, an individual's Fourth Amendment interest (expectation of privacy) must be balanced against legitimate governmental interests. *Id*. at 331.

The questions with which we are presented are: (1) whether the police had a reasonable belief that other gang members were present and (2) whether the arresting officers had the right to perform a protective sweep of Tapia's basement, where the gun was ultimately found. Tapia contends that the officers had no need to sweep the basement and that they could have adequately protected themselves by guarding the basement door.

In the present case, the officers observed a large vehicle, which is capable of holding up to six people, parked outside of the house; they saw the defendant appear from the basement; they knew that the house was sometimes used as a place for gang members to gather and conduct illegal activities; and they knew that the defendant and his other associates had been involved in previous violent crimes involving guns. These are weighty concerns indeed. Such specific and articulable facts are more than sufficient to warrant a protective sweep of the house, including the basement and attendant bathroom.

Although the defendant claims that the configuration of the basement in this case would preclude a protective

sweep since there was only one exit from the basement and the police officers could have secured the premises simply by guarding that door, such an argument is insufficient. Where, as here, police have good grounds to believe that potentially dangerous individuals could be in the basement, a protective sweep into that area is reasonable regardless of whether there might be a "less intrusive investigatory technique" for securing that area. *United States v. Winston*, 444 F.3d 115, 120 (1st Cir. 2006) (citing *United States v. Sokolow*, 490 U.S. 1, 11 (1989)). Officers should not be forced to suffer preventable risk of ambush, even where a location is so isolated that the officers could conceivably be protected without entering the area. An "ambush in a confined setting of unknown configuration is more to be feared than if it were in the open, more familiar surroundings." *United States v. Richards*, 937 F.2d 1287, 1291 (7th Cir. 1991). Moreover, "it does not seem logical or reasonable that . . . the agents would leave such an obvious hiding place, from which harm could be dispensed, unsecured." *Winston*, 444 F.3d at 120.

Tapia places great reliance on the reasoning of Justice Stevens, who in *Buie* suggested on the facts of that case that the state would have a difficult time on remand demonstrating that a sweep of the basement was reasonable to ensure the safety of the arresting officers. *Buie*, 494 U.S. at 338 (concurring). Justice Stevens's views, however, were merely part of a concurring opinion. In any event, he emphasized that it should be "the State's burden to demonstrate that the officers had a reasonable basis for believing not only that someone in the base-

ment might attack them or otherwise try to interfere with the arrest, but also that it would be safer to go down the stairs instead of simply guarding them from above until respondent had been removed from the house." *Id.* at 338. Ultimately, in the present case, there is good reason to believe that an officer's securing the top of the basement door without venturing downstairs to ensure the absence of a threat may not have been effective. This is particularly so for the inevitable egress, during which time officers may have been vulnerable to being attacked from behind, should armed attackers emerge from the unsearched basement. In light of the facts of the instant case, we have little difficulty in finding that the protective sweep of Tapia's house, including its basement and downstairs bathroom, was constitutional.

**B.  The District Court's Decision to Enhance Defendant's Sentence for Using a Firearm in Connection with a Crime of Violence Was Procedurally Sound and the Record Supports Such a Conclusion.**

Rule 32 of the Federal Rules of Criminal Procedure requires judges to rule on all disputed issues of fact that impact sentencing decisions, including those facts in the presentence investigation ("PSI") report. Fed. R. Crim. P. 32(i)(3)(B); *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005) (citing *United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005)). Tapia contends that the district court failed to resolve all contested issues of material fact and thus violated Fed. R. Crim. 32. Specifically, he argues that

the court erred on three grounds. First, he submits, it ignored Rodriguez's in-court testimony that was inconsistent with what she had told Detective Peraza. Second, the court did not address the inconsistences in Gozdal's various statements before crediting his last one. Third, the court failed even to reference Larsen's exculpatory testimony. Although we find the district court's failure to address Larsen's testimony troubling, we nevertheless conclude that the court abided by the requirements of Fed. R. Crim. 32.

Because the ballistic evidence is uncontroverted, the issues of fact to be resolved here are the testimony of three witnesses: Rodriguez, Gozdal and Larsen.

With respect to Rodriquez's testimony, the district court found that the statements made by Rodriguez closer to the time of the shooting were more credible than the statements she made in court. Timing is a valid consideration when assessing the reliability and credibility of witnesses. *United States v. Johnson*, 227 F.3d 807, 815 (7th Cir. 2000). Also, courts are allowed to find statements reliable where "they are generally consistent, both internally and with the remainder of evidence." *United States v. Westmoreland*, 240 F.3d 618, 630 n.4 (7th Cir. 2001). Moreover, deference is accorded to the judge who "had the opportunity to hear the testimony and observe the demeanor of witnesses." *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990). Thus, the district court did not err in its determination that Rodriguez's statements to Peraza, which were made closer to the time of the shooting and were largely corroborated

with additional evidence known to Peraza, were more reliable than those statements she made in court.

The district court also found that Gozdal's third statement made to Peraza was credible. Although there is some confusion as to whether Gozdal's statements were contradictory or whether he merely omitted mentioning the defendant in his second statement, the court was nevertheless justified in finding his third statement to be reliable. This is because the third statement included facts about the shooting that were specific and accurate. Not only was Gozdal able to identify the correct make of the gun used in the Greenview shootings, he was also able to provide the date and location of Tapia's alleged confession to him, the number of shots that were fired at the building and the source of the defendant's handgun. While the defendant points out that Gozdal may have had a motive to lie, the possibility that a witness is biased or may be inclined to lie is not in itself controlling. *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000). Moreover, as stated in the discussion of Rodriguez's testimony, the judge was able to observe and consider the manner and demeanor of the witnesses, and such observations should be given deference. *Edwards*, 898 F.2d at 1276.

Although Larsen's testimony contradicts Rodriguez's testimony about the events leading up to the Greenview shooting, the district court gives his testimony very little consideration and fails to give any explanation for doing so. Nevertheless, the court specified why it found the statements made by Rodriguez, which con-

flicted with Larsen's statements, to be credible. Such reasoning combined with the high level of deference that is given to the judge who actually observes the witnesses, supports the district court's implicit finding that Rodriguez's earlier statement was more reliable than Larsen's. That the district court did not consider Larsen's testimony is a harmless error in light of the fact that it addressed the credibility of Rodriguez's testimony. Indeed, the district court may have had good grounds to credit Rodriguez's original statement over Larsen's statement. After all, had Larsen verified Rodriguez's version of events, he would have been admitting to his involvement in criminal conduct. And even if it were true that Larsen had not distributed guns or seen Tapia on the date of the alleged meeting, this does not foreclose the possibility that such a meeting occurred, that Tapia was present at it, or that Tapia was involved in the ultimate shooting.

The defendant further claims that the record does not support the district court's decision to increase his sentence. District courts provide statements of their reasoning to further transparency and to promote public trust in the judiciary. *Rita v. United States*, 551 U.S. 338, 156 (2007). Without such reasoning, the appellate court lacks the tools to conduct meaningful review. *Gall v. United States*, 552 U.S. 38, 50 (2007). In the present case, the district court was required to identify the felony that the defendant was alleged to have been involved in, to show that the elements of that felony that were satisfied and to support its conclusions by a preponderance of the

evidence from the facts in the record. *United States v. Arnaout*, 431 F.3d 994, 1002 (7th Cir. 2005).

It is clear from the PSI report that Tapia was alleged to have violated 720 ILL. COMP. STAT. 5/24-1.2(a)(1). To be guilty of "aggravated discharge of a firearm" in Illinois, a defendant must have (1) knowingly discharged a firearm, (2) in the direction of or into a building, and (3) knew or should have known that the building was occupied. *Id.*; Ill. Pattern Jury Instructions, Crim. 18.12. The court heard forensic and ballistic evidence that revealed that at least 64 bullets were fired, 13 of which came from the gun possessed by the defendant; that the home located on South Greenview was struck multiple times and a large number of bullet fragments were recovered inside the home; and that the shooting occurred in the early hours of the morning when the home would likely be occupied, and in fact was. Although such evidence was not presented in a manner in which each element of the crime was assessed individually and separately, it does in fact satisfy the required elements for aggravated discharge of a firearm. To justify remand, the record must be so vague as to cause confusion. *See United States v. Robinson*, 537 F.3d 798 (7th Cir. 2008). We do not believe that the record in the present case is that vague.

Here, there is no contention that the evidence, if reliable, would not prove the correct crime or that the evidence supports a variety of possible offenses. Further, both parties knew precisely which crime was used to augment the sentence. While the record may be lacking the

ideal level of specificity, it is not sufficiently vague to warrant remand. Therefore, the district court did not err procedurally since it resolved all the issues of fact on the record.

### C.  The District Court Did Not Clearly Err in Determining by a Preponderance of the Evidence that Defendant Used a Handgun in Connection With a Crime of Violence.

Tapia's final argument is that the statements used to establish his involvement in the Greenview shooting are unreliable and that the district court abused its discretion in relying on them. We are not convinced.

The information that the district court relies on in making its decision must bear "sufficient indicia of reliability to support its probable accuracy." *United States v. Morrison*, 207 F.3d 328, 337 (7th Cir. 2000). We review the district court's determination of the reliability of hearsay sentencing evidence for an abuse of discretion. *United States v. Barnes*, 117 F.3d 328, 337 (7th Cir. 2000).

As stated earlier, although the district court's justifications may have been cursory, they were adequate. The district court stated that it found Rodriguez's statements made to Peraza to be more credible than her in-court statements because her earlier statements were corroborated. The district court also stated that it found Gozdal's third statement to be reliable because of the accuracy and specificity of details in his statement. Moreover, not only do district courts have broad leeway in

its conclusions under an abuse-of-discretion standard, but they are granted a high level of deference with respect to their conclusions on reliability due to their first-hand observations of witnesses. *Edwards*, 898 F.2d at 1176.

The district court must also give due weight to the inferences drawn by local law-enforcement officers. *Ornelas*, 517 U.S. at 699. The fact that the district court and Peraza credited the statements of Rodriguez and Godzal, which incriminated the defendant, gives further weight to the correctness of the district court's decision. Indeed, under the preponderance-of-the-evidence standard, the uncontroverted ballistic evidence on its own may well have been sufficient to support the district court's findings.

### III.  CONCLUSION

Jose Tapia objects to admitting the fruits of the protective sweep that led the police to find the gun which led to his being charged with being a felon in possession of a firearm. He also contends that the district court failed to meet its procedural obligations when it did not resolve all contested issues of material fact. Finally, he submits that the court wrongly sentenced him based on unreliable evidence. As explained above, we find these contentions to be without merit. The judgment of the district court is therefore

AFFIRMED.