**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 20, 2011[*]
Decided January 24, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-2900

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Indiana, |
| | Fort Wayne Division |
| *v.* | |
| | No. 1:09-CR-89-TLS |
| DANIEL C. PORTEE, | |
| *Defendant-Appellant.* | Theresa L. Springmann, |
| | *Judge.* |

ORDER

 Daniel C. Portee was in handcuffs on the porch of his apartment building in Fort Wayne, Indiana, when police officers entered his unit without a warrant or consent and found the rifle Portee had hidden inside moments before. After the district court denied Portee's motion to suppress, he entered a conditional guilty plea to possession of a firearm by a felon, see 18 U.S.C.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

§ 922(g)(1), reserving the right to challenge the suppression ruling but otherwise waiving his direct appeal. Portee was sentenced as an Armed Career Criminal to 15 years, the statutory minimum. See *id*. § 924(e)(1). He filed a notice of appeal, but his appointed lawyer asserts that there are no non-frivolous arguments and moves to withdraw. See *Anders v. California*, 386 U.S. 738 (1967). Portee has not responded to counsel's facially adequate brief. We limit our review to the potential Fourth Amendment issue she discusses. See *United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Portee attracted the attention of police when he tossed a brick through an apartment window in a high-crime neighborhood. He was holding the rifle when he threw the brick, and Michael Tapp, a plainclothes officer assigned to an ATF task force, witnessed the incident while passing by in an unmarked car. Portee then disappeared from view, and Tapp waited for backup before walking to the vandalized apartment, one of three units in a converted house. Window glass from Apartment 1, a front-facing unit, littered the porch, and there were broken lawn chairs on the porch and alongside the house. A woman waiting for the officers in front of the house identified herself as the occupant of Apartment 2, the other front-facing unit. By then Portee, whom one of the backup officers knew to be violent, had emerged from between the houses carrying a broom and dustpan but no rifle. He identified himself as the occupant of Apartment 3, described himself as the maintenance man for the apartment house, and said he was there to clean up the broken glass. He was ordered to the ground and handcuffed.

Meanwhile, the woman from Apartment 2 had told the officers that Portee and their neighbor in Apartment 1 had been involved in a disturbance that morning. Portee's girlfiend, who was highly agitated, also had been seen by Sergeant Joel Squadrito as he came through the backyard. As Sergeant Squadrito passed the open door to Portee's apartment on the side of the house, he could see that the sofa cushions were in disarray and that a bandana and spilled drink were in the middle of the floor. He and three other officers then entered the apartment to check for possible victims or other persons who might still be present and armed with the missing rifle or some other weapon. Once inside Officer Tapp located the rifle under bed pillows as he prepared to lift and look beneath a mattress and box spring. The entire encounter from throwing the brick to seizing the rifle had taken six to ten minutes. Portee was then taken to the police station.

None of these facts was in dispute. In upholding the seizure, the district court concluded that the officers were justified in entering Portee's apartment without a warrant because they reasonably believed that an injured victim might be inside. Alternatively, the court continued, the entry could be justified as a protective sweep under *Maryland v. Buie*, 494 U.S. 325, 337 (1990). The court also reasoned that the gun would be admissible under the doctrine of inevitable discovery.

We can bypass the discussion of inevitable discovery because we would agree with the district court's principal conclusion that the warrantless search leading to the discovery of the rifle was reasonable under the Fourth Amendment. The district court found that the police officers entered Portee's apartment based on reasonable a belief that the still-fluid circumstances required that they verify that no one inside needed their immediate help, see *United States v. Porter*, 594 F.3d 1251, 1255 -56 (10th Cir. 2010); *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003); *United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995), or posed an immediate threat, especially with the rifle unaccounted for, see *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010); *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004). And after entering the apartment, the officers appropriately limited their quick search to places where persons might be found. See *United States v. Tapia*, 610 F.3d 505, 510 (7th Cir. 2010); *United States v. Martins*, 413 F.3d 139, 149-50 (1st Cir. 2005); *Leaf v. Shelnutt,* 400 F.3d 1070, 1088 (7th Cir. 2005).

Accordingly, we agree with appellate counsel that an appellate challenge to the suppression ruling would be frivolous. The motion to withdraw is GRANTED, and the appeal is DISMISSED.