**Brian MONTGOMERY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0810–CR–636.

Court of Appeals of Indiana.

April 20, 2009.

Transfer Denied July 16, 2009.

Stephen Gerald Gray, Todd Ess, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Tiffany N. Romine, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

Following a bench trial, Brian Montgomery was convicted of dealing in cocaine, a Class A felony. On appeal, Montgomery raises the issue of whether the trial court abused its discretion in admitting evidence obtained by police during a warrantless search of his motel room. Concluding that the police did not violate the Fourth Amendment of the United States Constitution or Article I, section 11 of the Indiana Constitution and, therefore, the trial court properly admitted the evidence, we affirm.

### Facts and Procedural History[1]

On September 22, 2008, several Indianapolis Metropolitan Police Department officers were involved in a high-speed chase of a vehicle that had pulled suddenly away from a traffic stop. The female driver, later identified as Abigail Vargas, lost control of the vehicle and drove into a ditch. Vargas ran from the scene but was apprehended by Officer Ronald Hicks, who knocked her to the ground and used chemical spray to subdue her. As she was placed in handcuffs, Vargas yelled, "They are after us, they are after us, they are trying to get us." Transcript of Suppression Hearing at 15. She continued to make similar statements while officers questioned her and investigated the scene. In inventorying the contents of the vehicle before having it towed, officers found what they believed to be drug paraphernalia with drug residue; a baggie of hydrocodone, a scheduled narcotic; and a baggie of marijuana. Officers believed Vargas was under the influence of alcohol or drugs, although a portable breath test administered at the scene excluded alcohol as the source of her apparent intoxication. As officers were inventorying Vargas's possessions, they found a room keycard to a Days Inn motel located near the scene of her arrest. Vargas indicated that she was staying at the Days Inn with Montgomery, her boyfriend, and that she believed he was in danger. Officers asked if Vargas wanted them to check on Montgomery, and she stated that she did. Officer Steven Ferklic asked "if we did go to that location and got no answer at the door, did she want us to enter the room and check on him and she said yes." Tr. of Supp. Hrg. at 22. Officer Hicks testified that "[s]he was so adamant that he was in some

type of danger that I felt we would be neglecting our duties if we didn't at least respond to her complaints that he could be in danger. I felt we had an obligation to go and check on his welfare, absolutely." *Id.* at 41.

Officers went to Vargas's room at the motel and knocked on the door, identifying themselves as police officers. They could hear a television on inside the room, but no one answered. They used Vargas's keycard to enter the room and observed Montgomery sprawled asleep on the bed, his head back, mouth open, and face ashen. Officers entered the room and saw a baggie of white powder, later determined to be cocaine, hanging out of his left pants pocket. Officers retrieved the baggie and roused Montgomery. When he got up from the bed, officers found two pipes on the bed near where he had been laying. Officers placed Montgomery under arrest and upon conducting a search incident to the arrest discovered two additional baggies in his right front pants pocket. Montgomery admitted that two of the bags officers found contained cocaine and the other contained a cutting agent. The total weight of the cocaine was 43.58 grams.

Montgomery was charged with dealing in cocaine, a Class A felony because it was in an amount greater than three grams, and possession of cocaine, a Class A felony because it was in an amount greater than three grams and said possession took place within 1,000 feet of the Days Inn, a family housing complex. Montgomery filed a motion to suppress alleging that "the warrantless search of [Montgomery's] motel room was made without exigency, actual or apparent authority or [Montgomery's] consent." Appellant's App. at 29. Following a hearing, the trial court denied Montgom-

1. We held oral argument on March 26, 2009, at Indiana State University in Terre Haute, Indiana. We thank the faculty and staff of the Political Science Department for organizing the event, the attorneys for their capable advocacy, and the students for their interest.

ery's motion to suppress, finding that despite being in custody, Vargas voluntarily requested that the officers go to the motel room[2] and that "[b]ased on the totality of the circumstances it was reasonable for the officers to believe that [Vargas's] boyfriend was in the room and that he was [or] could be in danger[; t]herefore exigent circumstances justified the warrantless entry into [Montgomery's] motel room." Appellant's App. at 27–28.

Following a bench trial at which Montgomery renewed his objection to the admission of evidence recovered in the entry and search of the motel room, Montgomery was found guilty of both charges. At sentencing, the trial court merged the two counts, entered judgment of conviction only on the dealing charge, and sentenced Montgomery to twenty years with eighteen years suspended. Montgomery now appeals.

### Discussion and Decision

#### I. Standard of Review

■ Montgomery originally challenged the admission of the drug evidence through a pretrial motion to suppress, but appeals following a completed trial at which he objected to its admission. Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We review the admission of evidence for an abuse of the trial court's discretion. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind. Ct.App.2008), *trans. denied, cert. denied.* —— U.S. ——, 129 S.Ct. 1008, 173

L.Ed.2d 301 (2009). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Cochran v. State*, 843 N.E.2d 980, 982–83 (Ind. Ct.App.2006), *trans. denied, cert. denied,* 549 U.S. 1122, 127 S.Ct. 943, 166 L.Ed.2d 722 (2007). We do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App.2007). We consider evidence from the trial as well as evidence from the suppression hearing that is not in direct conflict with the trial evidence. *Kelley v. State*, 825 N.E.2d 420, 427 (Ind.Ct. App.2005).

Montgomery contends the trial court abused its discretion in admitting evidence discovered in a warrantless search of his motel room "without a valid consent or exigent circumstances, in violation of the U.S. Fourth Amendment and Article I, Section 11 of the Indiana Constitution." Brief of Appellant at 1.

#### II. Exigent Circumstances

##### A. Fourth Amendment

■ The Fourth Amendment to the United States Constitution states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The Fourth Amendment applies to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The fundamental purpose of the Fourth Amendment is to protect the legitimate

---

**2.** Both Montgomery and the State disagree with the trial court's characterization of events surrounding Vargas's consent to enter the motel room and agree that the police did, in fact, request her consent. *See* Brief of Appellant at 10 ("[T]he court's conclusion that the police did not *initiate* a request to enter the room is simply not supported by the record.") (emphasis in original); Brief of Appellee at 12 n. 5 ("The State disagrees with the trial court's determination that the officers did not ask Vargas for consent.").

expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Taylor v. State,* 842 N.E.2d 327, 330 (Ind.2006) (citing *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Id.* The State bears the burden of proving that at the time of a warrantless search an exception to the warrant requirement existed. *Rush v. State,* 881 N.E.2d 46, 50 (Ind.Ct.App.2008). The propriety of a warrantless search is subject to de novo review. *Engram v. State,* 893 N.E.2d 744, 748 (Ind.Ct.App.2008), *trans. denied.*

■■■ The State offered exigent circumstances as the basis for the warrantless search. *See* Tr. of Supp. Hrg. at 43 ("Based on exigent circumstances, we would ask the Court deny the motion to suppress the warrantless search."); Tr. of Bench Trial at 10 (The State, responding to Montgomery's objection, stating "Your Honor, this was already decided at a previous suppression hearing where four officers testified as to the exigent nature of the entry."). Where exigent circumstances exist, a warrant is not required. *Peters v. State,* 888 N.E.2d 274, 278 (Ind. Ct.App.2008) ("[W]here the 'exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment, the warrant requirement is inapplicable."), *trans. denied.* Among the exigent circumstances that have justified a warrantless search or seizure are entries to prevent bodily harm or death or to aid a person in need of assistance. *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (police may enter a residence without a warrant "when they reasonably believe that a person within is in need of immediate aid."); *McDermott v. State,* 877 N.E.2d 467, 473–74 (Ind.Ct.App.2007), *trans. denied,* A search extending beyond the exigencies presented violates the Fourth Amendment, however. *Bryant v. State,* 660 N.E.2d 290, 301 (Ind.1995), *cert. denied,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). Moreover, "while exigent circumstances justify dispensing with a search warrant, they do not eliminate the need for probable cause." *Cudworth v. State,* 818 N.E.2d 133, 140 (Ind.Ct.App. 2004), *trans. denied,* "[I]n an emergency, the probable cause element may be satisfied where the officers reasonably believe a person is in danger." *Id.* at 140–41 (quoting *United States v. Holloway,* 290 F.3d 1331, 1338 (11th Cir.2002), *cert. denied,* 537 U.S. 1161, 123 S.Ct. 966, 154 L.Ed.2d 897 (2003)).

Montgomery contends that the officers could not have reasonably believed he was in danger based solely on Vargas's statements. In *Cudworth,* which Montgomery likens to his case, police responded to an anonymous tip that someone named "Louis" was being held at gunpoint at an address at which criminal activity had previously occurred. As the officers were en route, dispatch phoned the residence and told everyone inside to exit the house. When officers arrived, six or seven people, including the defendant, exited the house. When officers explained the reason for their presence, "everyone stated [to the officers] that they had no idea what was going on." *Id.* at 136. The officers asked one of the people who had exited the house if there was a man inside the house being held at gunpoint, if there was anyone still inside the house, and whether she saw anyone with a gun inside the house; she answered "no" to each question. After determining that none of the people who had exited the house were named "Louis," officers entered the house and began

searching. During a forty-five minute search, officers discovered a revolver and a sawed-off shotgun in plain view and a trash bag containing evidence of items used to manufacture methamphetamine. At that point, officers obtained a search warrant. In executing the warrant, officers discovered additional evidence of drug manufacturing. Defendant, a resident of the house, was charged with six counts, including conspiracy to commit dealing in methamphetamine and possession of chemical reagents or precursors with the intent to manufacture methamphetamine. The trial court denied defendant's motion to suppress evidence obtained during the search of his residence and admitted the evidence over his objection at trial. Defendant was found guilty of the charges mentioned above.

On appeal, defendant challenged the trial court's admission of evidence, claiming the officers' entry was not justified by exigent circumstances. We agreed, reversing defendant's convictions. *Id.* at 142. Officers responded to an anonymous tip and were unable to corroborate facts received from the emergency call; in fact, all the information they gained prior to entering the residence was contrary to the anonymous tip. Thus, the State failed to prove that officers possessed objective evidence that exigent circumstances existed. *Id.; but see Vitek v. State,* 750 N.E.2d 346, 349 (Ind.2001) (officer had reasonable belief that homeowner was in imminent need of medical assistance due to report by homeowner's ex-wife that he suffered from a number of physical disabilities and did not leave the house very often or for very long yet she had not heard from or seen him for almost three weeks; therefore, officer's warrantless entry into the house

where he found evidence of foul play was supported by exigent circumstances).

Montgomery argues that the "purported belief of the police that someone was in need of aid was not reasonable because it was based entirely on rantings of a clearly mentally disturbed woman under the influence of narcotics."[3] Appellant's Brief at 9. Officers did believe Vargas was under the influence of some chemical substance and a portable breath test ruled out alcohol. Vargas was "very agitated, disturbed, upset." Tr. of Supp. Hrg. at 20. She indicated numerous times that someone was "after" her and Montgomery and that they were in danger. However, at some point, she was able to "think more clearly and became a little bit more rational" and was able to answer officers' questions coherently. *Id.* Vargas told officers that she was staying with Montgomery at a nearby motel; in conducting a search incident to her arrest, officers found a room keycard to that motel. Vargas gave officers her room number and said that Montgomery should be the only person in the room if he was there at all. Vargas could not know for sure he was in the room because she had not been there "for a little bit." *Id.* at 22. Officer Ferklic believed Vargas led police on the chase because "she was trying to get back" to the hotel, *id.* at 29, and her actions, statements, and demeanor "somewhat supported her contention that she was in fear of her life as well as his," *id.* at 30. "Based on the way she was acting," Officer Danny Reynolds believed "there might be something to" her concerns. *Id.* at 36. Officers went to the motel and spoke briefly with the clerk, who pointed them toward the room Vargas had said was hers and Montgomery's. Officers knocked a couple of times, identify-

---

3. Montgomery's characterization of Vargas's mental state is unsupported by any evidence in the record.

ing themselves as police.[4] No one answered, but officers could hear a television on inside the room. Officers then used Vargas's keycard to open the door and saw Montgomery sprawled on the bed. Officer Reynolds initially "thought he was deceased [because] his face was ashen. His face was white, he was laying with his head back, his mouth was open ... [y]ou could hardly even tell if he was breathing." *Id.* at 37. Officers then entered the room.

Montgomery points out that Vargas never identified the "they" she claimed were after her and Montgomery. He argues that the police observed nothing at the motel to corroborate her claims and that they did not know if Montgomery was even in the room; thus, they had no objectively reasonable evidence that there was anyone inside the room in need of assistance. The State counters that whether or not Vargas was under the influence of drugs, there was no indication that her statements were unreliable; she indicated that she was staying at the motel, she possessed a keycard to that motel, she identified her boyfriend, and she provided their room number. Her behavior was consistent with someone in fear. The State contends that it was reasonable for officers to believe because of the noise coming from the hotel room that someone was inside and further to believe because their knocks went unanswered that whoever was inside might be in need of aid.

As Montgomery pointed out at oral argument, a person has a right to refuse to answer the door when someone knocks. *Cox v. State,* 696 N.E.2d 853, 858 (Ind. 1998) (citing *United States v. Berkowitz,* 927 F.2d 1376, 1387 (7th Cir.1991)); *see Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). The State acknowledged at oral argument that the lack of response to the officers' knocks would not alone have been sufficient to justify their entry into the room. However, here the officers also had Vargas's statements that Montgomery was in danger and her actions that were consistent with fear and concern. Given the information that the person within the room was in danger, officers reasonably could have interpreted the silence that met their knocks as an inability to respond.

Unlike *Cudworth,* where the officers received information upon arriving at the scene that specifically refuted the existence of an emergency, the officers in this case obtained no information upon arrival at the motel room that cast doubt on Vargas's claims. And unlike the majority of cases discussing exigent circumstances, the officers here were not motivated by intent to apprehend a suspect and/or seize incriminating evidence. *See Holder v. State,* 847 N.E.2d 930, 937 (Ind.2006) ("Among the exigencies that may properly excuse the warrant requirement are threats to the lives and safety of officers and others and the imminent destruction of evidence."); *McDermott,* 877 N.E.2d at 474 ("Exigent circumstances have also been found where a suspect is fleeing or likely to take flight to avoid arrest; or the case involves hot pursuit or movable vehicles."). Vargas did not allow the officers to enter the hotel room to arrest Montgomery because he was a threat to her or to anyone else; she asked them to enter because she believed

---

4. Montgomery claims in his Reply Brief that the officers failed to identify themselves when they knocked on the door. The testimony at the suppression hearing, however, was that Officer Morton Gallagher "knocked on the door a couple of times, and said police or IMPD...." Tr. of Supp. Hrg. at 36.

there was a threat to *Montgomery*. Vargas's concern for Montgomery was immediately apparent from her words and actions. This case is most akin to *Stewart v. State*, 688 N.E.2d 1254 (Ind.1997). In *Stewart*, the defendant and his girlfriend were staying at a motel. On the day they were to check out, a maid knocked on the door after check-out time. Getting no response, she asked the front desk to call the room. Two calls went unanswered. The maid knocked again and then used her key to enter. The door chain barred her entrance, but she could see defendant asleep on a couch and a candle and a white powder on the table in front of him. After a third call from the front desk failed to rouse the defendant, the police were called. Police knocks were also unheeded so the manager allowed police into the room. The police roused defendant and his girlfriend and seized over thirty-seven grams of cocaine and 1,189 grams of marijuana. Although there was clearly some suspicion that evidence of illegal activity would be found in the room, our supreme court held the Fourth Amendment was not offended by police entering the room. *Id.* at 1257. "[R]epeated calls had gone unanswered and the maid had observed that the defendant was present but did not respond.... This could have reasonably suggested that the occupants of the room ... were in need of medical attention." *Id.*

Montgomery would have us require the officers to obtain specific corroborating evidence before entering the room; however, the very point of exigent circumstances is that officers are confronted with a situation where time is of the essence and immediate action is required.[5] As stated by the United States Supreme Court, "[w]e do not question the right of the police to respond to emergency situations.... The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal." *Mincey*, 437 U.S. at 392–93, 98 S.Ct. 2408. We should not expect—nor should we want—officers to have to collect the kind of facts and circumstances that would rise to the level of probable cause to arrest or to procure a warrant to search for incriminating evidence before entering a place with the purpose of protecting or preserving life. *See Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.1963) ("[T]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct."), *cert. denied*, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). The State proved both exigency and an objectively reasonable belief that Montgomery was in danger or in need of aid. Therefore, the officers' warrantless entry into the motel room did not violate the Fourth Amendment.

### B. Article I, Section 11

The Indiana Constitution also prohibits unreasonable searches and seizures. The validity of a search pursuant to the Indiana Constitution turns on an evaluation of the reasonableness of officer conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). The reasonableness of a search or seizure turns on a balance of

---

5. Additionally, it is difficult to imagine what corroborating evidence could be obtained in this situation: if the person allegedly in need of aid does not answer the door, how are officers to know, other than by opening the door, whether he is not answering because he chooses not to or because he is unable to? They could call the room, but the same conundrum would arise if the phone is not answered. Just because there are no signs of a struggle outside a room does not mean one did not occur within the room's confines. In short, Montgomery's position that the officers in this situation were required to obtain corroborating evidence would require absolute certainty and imposes too high a bar.

1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. *Id.* at 361. It is the State's burden to show that under the totality of the circumstances, the officers' intrusion was reasonable. *Id.* at 360.

Montgomery contends that the officers acted unreasonably in entering the motel room because their entry was based on Vargas's "unsubstantiated, vague, drug induced hallucinations."[6] Brief of Appellant at 8. Montgomery contends the warrantless search was objectively unreasonable because officers did not know how long ago Vargas had been at motel, did not call the room or ask the motel desk clerk if he had seen anything suspicious, and had no corroboration of Vargas's statements. The State, relying on the *Litchfield* factors, responds that the officers had no suspicion that Montgomery was violating the law, that the degree of intrusion was reasonable given the exigency, and that Vargas's statements and behavior coupled with the lack of response when they knocked at the motel room door gave officers a reasonable belief that Montgomery was in danger or in need of aid. The State therefore argues that the warrantless entry into the motel room was reasonable under the Indiana Constitution. Montgomery points out in his reply brief that an inventory search of the vehicle Vargas had been driving—which was registered in Montgomery's name—turned up evidence of narcotics and drug paraphernalia, and that it was not until after the vehicle search that officers made their way to the motel. *See* Appellant's App. at 20–21. Thus, he contends the State's assertion that there was "no

evidence the officers suspected Defendant of a crime," *see* brief of appellee at 6, is disingenuous and the welfare check was a pretext to search for narcotics. Montgomery also asserts that the degree of intrusion is greatest when the place to be searched is a home, *see Willis v. State,* 780 N.E.2d 423, 428 (Ind.Ct.App.2002) (holding that a hotel room is a home for purposes of Article I, section 11), and that his failure to open the door did not corroborate any exigency.

■ Although we give a liberal construction to Article I, section 11 to favor protection of individuals from unreasonable intrusions on privacy, "Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." *State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind. 2002). "It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns." *Holder,* 847 N.E.2d at 940. Police officers have a caretaking as well as an investigatory function. *See Wilson v. State,* 247 Ind. 454, 458, 217 N.E.2d 147, 150 (1966) ("Any police officer who sees or is informed of such [an emergency] has not only the right, but the duty, to make an instant and prompt investigation."). The officers here observed firsthand Vargas's actions and demeanor as she repeatedly insisted Montgomery was in danger. They received no answer when they sought to confirm Montgomery's welfare. Upon opening the door to the motel room, they saw him passed out on the bed, looking so ashen that one officer thought he might be dead. If Montgomery had come to harm by someone else's hand, officers also had to be

---

**6.** Again, Montgomery's assertion that Vargas suffered from hallucinations is unsupported    by evidence in the record.

concerned about a possibly dangerous person or persons in or around the motel, where a number of other people were likely to be present. As noted by the Illinois Appellate Court three decades ago, "The very uncertainty created by the totality of the circumstances created a justification, and actually a need, for the police to take immediate action." *People v. Brooks,* 7 Ill.App.3d 767, 776, 289 N.E.2d 207, 213 (1972); *see also Patrick v. State,* 227 A.2d 486, 489 (Del.1967) ("The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties....."). Officers had reasonable grounds to believe an emergency was at hand, they were motivated primarily by the intent to give assistance, and Vargas's statements and the room keycard in her possession linked the hotel room to the possible emergency. Under the totality of the circumstances, we hold officers acted reasonably in entering the motel room.[7]

### Conclusion

Officers' entry into Montgomery's motel room violated neither the Fourth Amendment nor Article I, section 11.[8] The trial court's admission of evidence discovered upon their entry was not, therefore, an abuse of discretion. Montgomery's conviction and sentence is affirmed.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

7. As for Montgomery's contention that the purported "welfare check" was a mere pretext to search for drugs, even if that was true, an officer's subjective motives do not invalidate an otherwise objectively reasonable warrantless search. *See Whren v. United States,* 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

8. Because we conclude that exigent circumstances justified the warrantless entry into the motel room, we need not address the parties' arguments regarding the trial court's alternate finding that Vargas's consent to enter also justified the entry.