

**FILED**
Aug 14 2013, 5:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICK MCILQUHAM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1212-CR-631 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT, CRIMINAL DIVISION
The Honorable Michael S. Jensen, Judge
Cause No. 49G20-1107-FB-47971

**August 14, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

The appellant-defendant Nick McIlquham is appealing his convictions for the Unlawful Possession of a Firearm by a Serious Violent felon,[1] a class B felony, Neglect of a Dependent,[2] a class D felony, Possession of Marijuana,[3] a class A misdemeanor, and Possession of Paraphernalia,[4] a class A misdemeanor. McIlquham challenges the police officers' search of the apartment where he occasionally resided and the discovery of a handgun, marijuana, and a scale in the residence. As a result, McIlquham argues that these items should not have been admitted into evidence at trial. Finally, McIlquham maintains that his conviction for possession of paraphernalia cannot stand because the State failed to present sufficient evidence with regard to that offense.

The State counters that the seizure of these items and their admission into evidence did not violate McIlquham's Fourth Amendment rights under the United States Constitution because the search of the apartment was consensual and contends that the community caretaking exception to the warrant requirement justified the warrantless search.

We conclude that McIlquham's Fourth Amendment rights were not violated and the evidence was properly admitted into evidence. Similarly, we find that the evidence

---

[1] Ind. Code § 35-47-4-5.

[2] Ind. Code § 35-46-1-4.

[3] Ind. Code § 35-48-4-11.

[4] I.C. § 35-48-4-8.3.

2

was sufficient to support McIlquham's conviction for possession of paraphernalia. Thus, we affirm McIlquham's convictions.

## FACTS

On July 5, 2011, around 9:00 a.m., McIlquham was sleeping in Amber Rolland's apartment in the Stone Lake Lodge Apartments (Stone Lake) on the south side of Indianapolis. Around that time, Indianapolis Metropolitan Police Department (IMPD) Officers Matthew McFadden and Daniel Disney responded to a call regarding a young child standing near a pond at Stone Lake. When Officer McFadden arrived, he noticed the little girl, later identified as "R.,"[5] who appeared to be about three years old, and a woman, standing next to the pond. Officer McFadden later recalled that R. was not wearing a diaper. R. was naked from the waist down and was attempting "to eat Cheerios off the ground." Tr. p. 36. At some point, when the officers were talking to R. and Catherine Meyer, who was at the scene, McIlquham appeared and stated that he was R.'s father. McIlquham stated that he had fallen asleep and that R. "must have gotten out of the apartment." Id. at 38. Officer McFadden informed McIlquham that he "needed to come back to [the] apartment and make sure that the living conditions were [safe] for the child . . . and that we would probably end up getting ahold of CPS (Child Protective Services)." Id. at 39, 42, 85, 96. Officer Disney later recalled that McIlquham "said it was okay" for the officers to follow him back to the apartment. Tr. p. 96. McIlquham then picked up R. and started walking back to the apartment with Officer McFadden.

---

[5] R.'s last name does not appear in the transcript of the proceedings.

When Officer McFadden and McIlquham arrived at the apartment, McIlquham opened the door, where Officer McFadden saw McIlquham make a "bee line" for the "kitchen . . . and walk . . . at a very fast pace to the kitchen." Id. at 39. Officer McFadden then saw McIlquham make "furtive movements" from the counter to his pockets. Id. at 42. Officer McFadden explained that "not knowing whether [McIlquham] grabbed any weapons . . . or anything that could have harmed me," he placed McIlquham's hands behind him. Id. A patdown search disclosed that McIlquham "had stuffed a bunch of some marijuana into his pockets." Id.

After restraining McIlquham, Officer McFadden noticed some scissors, cut baggies, and marijuana on the kitchen counter. Id. at 43. After Officer McFadden told McIlquham to sit down in the living room, Officer McFadden saw "a bunch of marijuana [residue] all over the carpet" and on a child's table. Id.

Officer McFadden advised McIlquham of his Miranda[6] rights. Thereafter, Officer McFadden asked McIlquham if he lived at the apartment, to which McIlquham replied, "sometimes." Id. at 44. In response to Officer McFadden's questions, McIlquham acknowledged that his name was not on the lease and informed them that Rolland had rented the apartment.

When Rolland arrived at the apartment and talked with the officers, they told her that they had been summoned to check on R.'s welfare and explained to Rolland what they had found in the residence. Officer McFadden explained to Rolland that because

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

4

drugs had been found in the apartment, CPS would be notified and a determination would be made as to whether R. would be allowed to remain at the apartment. Thereafter, Rolland read and signed a consent-to-search form for the officers to search the residence.

In addition to the marijuana that the police saw on the kitchen counter, the living room floor, and the child's table, they discovered additional marijuana in the apartment's bedroom. They also found a loaded .22 caliber handgun in a case under the bed. McIlquham admitted that the marijuana and the gun belonged to him.

McIlquham was later interviewed at the police station by IMPD Detectives. McIlquham stated that the officers who found R. had "wanted to come back to my house and make sure everything's fit." Ex. 19. McIlquham recounted: "I walked in the door and I knew I had stuff laying out . . . . I tried to put it in my pocket so he didn't see it 'cause I knew he was gonna arrest me . . . he didn't see me put it in my pocket . . . he saw me reachin' in my pocket." Id. McIlquham again repeated that the drugs and the handgun were his and that Rolland did not know about the items.

On July 7, 2011, the State charged McIlquham with Count I, unlawful possession of a firearm by a serious violent felon, a class B felony, Count II, neglect of a dependent, a class D felony, Count III, dealing in marijuana, a class A misdemeanor, Count IV, possession of marijuana, a class A misdemeanor, and Count V, possession of paraphernalia, a class A misdemeanor.

McIlquham subsequently entered an "open plea" to Count II, neglect, and to Count IV, possession of marijuana. Tr. p. 15-22. The trial court took those pleas under

5

advisement. Thereafter, the matter proceeded to a bench trial. McIlquham objected to the items that were recovered during the search of the apartment and moved to suppress the admission of those items. The trial court denied McIlquham's motion to suppress, and found him guilty of the remaining counts, except for the dealing in marijuana charge. McIlquham was sentenced to an aggregate term of six years on all counts and he now appeals.

DISCUSSION AND DECISION

I. Search of Apartment

McIlquham argues that the search of the apartment was improper and the police officers' discovery and seizure of the evidence should have been excluded from the evidence at trial pursuant to his right to be free from unlawful search and seizure under the Fourth Amendment. Specifically, McIlquham maintains that because neither he nor Rolland validly consented to the search of the residence, the evidence should not have been admitted.

We initially observe that a trial court has broad discretion in ruling on the admissibility or exclusion of evidence. Kimbrough v. State, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling will be disturbed only upon a showing of an abuse of that discretion. Id. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. Id.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against

6

unreasonable searches and seizures, shall not be violated. . . ."  In general, warrantless searches are "per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions."  Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006).   A search conducted without a warrant requires the State to prove that an exception to the warrant requirement is "applicable at the time of the search."  Id.

Although McIlquham maintains that the evidence should have been excluded because neither he nor Rolland validly consented to the search of the apartment, we need not address that contention because the police officers were entitled to enter the apartment under the community caretaking exception to the warrant requirement.

Indeed, McIlquham discusses the various exceptions to the warrant requirement in light of exigent circumstances, which include emergency situations.  For instance, in the case of exigent circumstances, the evaluation focuses on the needs of law enforcement to apprehend criminals, stop crimes in progress, render aid to victims, or seize evidence that may be destroyed.  Mincey v. Arizona, 437 U.S. 385, 394 (1978).  In other words, this exception focuses on situations that make the needs of law enforcement "'so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'"  Id. (quoting McDonald v. United States, 335 U.S. 451, 456 (1948)).

The community-caretaking function also recognizes that "police are expected not only to enforce the criminal laws but also to aid those in distress, abate hazards, prevent potential hazards from materializing, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities."  Fair v. State, 627 N.E.2d

7

427, 431 (Ind. 1993). The police may discharge such a caretaking function whenever circumstances compel it, even in the absence of specific statutes authorizing such conduct. Id.

That said, the State acknowledges that Indiana has specifically applied the community caretaking exception in instances where police officers have standard criteria for exercising the function with respect to immobilized automobiles. Id. at 432-33. However, we note that the welfare of a child was not involved in prior cases when construing this exception. Id.

Some courts have applied the community caretaking exception to permit warrantless entry into homes for limited purposes. See United States v. Rohrig, 98 F.3d 1506, 1523-24 (6th Cir. 1996) (holding that police may enter a home to abate a nuisance when the occupants have not responded to police inquiries); United States v. Quezada, 448 F.3d 1005, 1008 (8th Cir. 2006) (holding that police may enter a home to investigate an outside door that is open when there is no response to the officers' inquiries); cf. Montgomery v. State, 904 N.E.2d 374, 382 (Ind. Ct. App. 2009) (applying exigent circumstances and caretaking rationales to justify a warrantless entry into a hotel room).

Notwithstanding the above, we embrace the notion that there are certainly instances that threaten the well-being of a small child that do not necessarily involve the commission of a criminal offense. In our view, such circumstances are present here. As discussed above, the responding police officers discovered R., a partially naked toddler, wandering near the retention pond in the apartment complex. Tr. p. 35-36. Officer

8

McFadden testified that he wanted to check the apartment where R. lived to "see [whether the apartment was] dirty, clean, if there is any food, [or] if there is a bed for the child to sleep in." Id. at 79. The officers acknowledged that the "whole purpose is for the safety of this child." Id. In our view, there were certainly objectively reasonable concerns about McIlquham's right to retain custody of R. in light of the conditions and circumstances in which she was discovered. Moreover, not allowing the police to conduct a community-caretaking function to operate in a case such as this one—at least to the extent of allowing a non-violent entry into a home to conduct a cursory visual inspection of the interior of the residence and its occupants—would result in the unreasonableness that Fourth Amendment jurisprudence seeks to avoid. See Rohrig, 98 F.3d 1506, 1523-24 (6th Cir. 1996) (noting that one factor that weighs in favor of the community-caretaking function is that insistence on the police officers' obtaining a warrant would, in some circumstances, be tantamount to an unreasonable permission of harm). Put another way, the officers' inability to arrest McIlquham, or requiring a warrant or a search of the apartment under the circumstances, would have required the police officers to either abandon their responsibilities to protect R. or placing R. in the custody of CPS without additional inquiry or investigation. See Ind. Code § 31-34-2-3(a) (providing for placing a child in need of services into immediate custody when arrest of a 'perpetrator' is not possible or will not alleviate the child's condition). In short, the adoption of a limited community-caretaking authority for police officers to enter a

9

residence under such circumstances does not offend Fourth Amendment concerns. Rohrig, 98 F.2d at 1523-24.

Finally, we note that while McIlquham asserts in his appellate brief that the police officers' actions violated the provisions of Article 1, Section 11 of the Indiana Constitution, he did not present that argument at trial. Thus, the issue is waived. See, e.g., Grace v. State, 731 N.E.2d 442, 444 (Ind. 2000) (observing that grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal). Moreover, a "generic challenge" to a search or seizure is insufficient to present a claim under the Indiana Constitution. See Dye v. State, 717 N.E.2d 5, 24 (Ind. 1999) (holding that a defendant cannot invoke the provisions of the Indiana Constitution against a search or seizure without a separate and independent analysis of the claim).

Waiver notwithstanding, even if McIlquham had properly challenged the propriety of the search under Article 1, Section, 11, his argument would fail. As this Court noted in Montgomery v. State:

> Although we give a liberal construction to Article I, section 11 to favor protection of individuals from unreasonable intrusions on privacy, "Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." State v. Gerschofer, 763 N.E.2d 960, 965 (Ind. 2002). It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns. Holder v. State, 847 N.E.2d 930, 940 (Ind. 2006). Police officers have a caretaking as well as an investigatory function. See Wilson v. State, 247 Ind. 454, 458, 217 N.E.2d 147, 150 (1966) (observing that any police officer who sees or is informed of such [an emergency] has not only the right, but the duty, to make an instant and prompt investigation).

10

904 N.E.2d at 382.

As our Supreme Court observed in <u>Litchfield v. State</u>, police intrusion is lawful under Article I, Section 11 of the Indiana Constitution, provided that it remains reasonable in view of (1) the degree of concern or suspicion that a violation of the law has occurred; (2) the degree to which the intrusion imposed on the citizen's ordinary activities; and (3) the extent of law enforcement needs. 824 N.E.2d 356, 359 (Ind. 2005).

In this case, the extent of concern over R.'s well-being was significant in light of the circumstances where the police officers found her. Tr. p. 35-37. The degree of intrusion into McIlquham's ordinary activities was negligible, in that he appeared to have been outside only to locate R. McIlquham intended to return to his home, and there is no showing that a cursory visual inspection of the premises would have interfered with McIlquham's ordinary activities. <u>Id.</u> at 35-37. Finally, as discussed above, the extent of law enforcement needs to ensure the well-being of small children without unnecessarily separating them from their parents through automatic placement with CPS weighs in favor of permitting the officers' cursory entry into the residence like what occurred here. In short, the police officers' performance of a limited community-caretaking inspection of the apartment does not establish that they acted unreasonably under Article I, Section 11 of the Indiana Constitution. <u>Id.</u> Thus, for all of these reasons, McIlquham's claims fail, and we conclude that the trial court properly admitted the items into evidence that the police officers seized from the apartment.

11

## II. Sufficiency of the Evidence

McIlquham also argues that the evidence was insufficient to support his conviction for possession of paraphernalia. Specifically, McIlquham argues that the State only proved that McIlquham possessed the scale and failed to establish that he intended to use it to "test the strength, effectiveness, or purity of a controlled substance." Appellant's Br. p. 7.

When reviewing sufficiency of evidence claims, we will not reweigh the evidence or re-evaluate the credibility of witnesses. Kiplinger v. State, 922 N.E.2d 1261, 1266 (Ind. 2010). We will defer to the fact-finder's exclusive province to weigh conflicting evidence. Delarosa v. State, 938 N.E.2d 690, 697 (Ind. 2010). We will only overturn a verdict if it finds that, after considering the evidence and inferences that support the conviction and resolving all discrepancies and conflicts in favor of the verdict, a rational person could not have found the defendant guilty. Williams v. State, 873 N.E.2d 144, 147 (Ind. Ct. App. 2007).

To convict McIlquham of possession of paraphernalia, the State was required to prove that he knowingly possessed the scale and that he intended to use the device to test the "strength, effectiveness or purity of . . . marijuana." Ind. Code § 35-48-4-8.3(a)(2). Moreover, a "controlled substance" includes marijuana. Ind. Code § 35-48-1-9; I.C. § 35-48-2-4(d)(22).

12

In this case, during a post-arrest interview, McIlquham admitted that he used the scales to measure the weight of the marijuana that he purchased to ensure that it was the quantity for which he had bargained. Tr. p. 113. McIlquham erroneously asserts that "[u]sing a scale to simply learn the weight of the marijuana is not proscribed" by the paraphernalia statute. Appellant's Br. p. 19. However, as noted above, the relevant statute embraces any device that is used to test the strength, effectiveness, or purity of a controlled substance without limitation. I.C. § 35-48-4-8.3(a)(2). Although a scale cannot perform a chemical analysis of a sample or measure the sample's ability to provide a particular 'dose' of the drug with the desired effectiveness, the definition of paraphernalia is not limited to devices that can perform such complex, specific functions. Id. Rather, the statute proscribes the possession of devices with the intent to measure any aspect of the strength, effectiveness or purity of any controlled substance. Id.

Indeed, we are aware that absent McIlquham's explicit confession that he used the scales for weighing the marijuana or without the circumstantial evidence of drug packaging, handling, or weighing or portioning, the State's case for possession of paraphernalia may likely have failed. See Harrison v. State, 469 N.E.2d 22, 24 (Ind. Ct. App. 1984) (holding that a conviction for possessing paraphernalia is unsound absent specific evidence showing that a device was intended to be used for a proscribed purpose).

In this case, however, the evidence shows that the factfinder could reasonably conclude that McIlquham possessed the scales with the intent of testing the strength,

effectiveness, or purity of marijuana.  As a result, we affirm McIlquham's conviction for possession of paraphernalia.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.