**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**J. ZACH WINSETT**
**J. BURLEY SCALES**
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN L. REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL SCHEPERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  19A01-1303-CR-100 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DUBOIS SUPERIOR COURT
The Honorable Mark R. McConnell, Judge
Cause No. 19D01-1208-FB-663

**November 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this interlocutory appeal, we are called upon to decide whether it was proper for sheriff's deputies pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution to approach the appellant-defendant Michael Schepers's residence, perform a "knock and talk" procedure, enter the house, and conduct a protective sweep of the residence after discovering that Schepers and some of his relatives had made several pseudoephedrine purchases.

In light of the officers' experience that the occupants were likely operating a methamphetamine laboratory in the house, exigent circumstances existed and the officers' entry and protective sweep of the residence was warranted after they noticed a strong odor of ammonia emanating from the house. Also, after securing and executing a search warrant, the officers seized a meth lab, some marijuana, and several precursors from the residence.

We affirm the trial court's denial of Schepers's motion to suppress and remand this cause for trial.

### FACTS

Sometime in August 2012, Dubois County Sheriff's Deputy John Anderson was examining the local pseudoephedrine purchase logs and discovered what he considered to be several "peculiar buys." Tr. p. 14-15. Deputy Anderson noticed that two teenagers, who lived approximately a block apart, had purchased some pseudoephedrine on August

2

12, 2012. Deputy Anderson located one of the purchasers, Steven Jessee, and asked if he still had the drug. Jessee admitted that he had given the pseudoephedrine to Schepers.

Deputy Anderson later learned that another individual, Dylan Crays, had purchased a box of pseudoephedrine and had given it to Schepers. It was also determined that some of Schepers's relatives had purchased various quantities of pseudoephedrine on August 11 and 13. Some of the drugs had been purchased in another county.

Deputy Anderson and some other officers went to Schepers's house, approached the main door of the residence, and noticed a "strong smell of ammonia." Tr. p. 22. Although Deputy Anderson knocked on the door, no one answered. However, Deputy Anderson heard footsteps inside the residence, and heard some dogs barking. Two other officers at the scene heard some "commotion" and people running inside the house. Id. at 59-60, 66, 27-28, 30-33.

Deputy Anderson opened the unlocked door, announced his presence, and ordered everyone in the house to leave. Deputy Anderson also noticed a cloud of smoke emanating from the residence and smelled marijuana. Schepers exited the residence, which he acknowledged was his, and denied that anyone else was inside. However, two other individuals eventually emerged and walked outside. Schepers also admitted to one of the detectives that he was operating a methamphetamine lab in the house.

Deputy Anderson telephoned the prosecutor's office and informed the deputy prosecutor what had occurred. Deputy Anderson and an Indiana State Trooper entered the house and conducted a protective sweep of the residence. Deputy Anderson applied

3

for a search warrant that was subsequently granted. During a search of the residence, the police officers located a meth lab, precursors that related to methamphetamine manufacture, and some marijuana.

Schepers was charged with dealing in methamphetamine, a class B felony, possession of chemical reagents or precursors with intent to manufacture a controlled substance as a class D felony, possession of marijuana as a class A misdemeanor, and possession of paraphernalia as a class D felony.

On September 18, 2012, Schepers filed a motion to suppress, claiming that the evidence recovered from the residence should not be admitted at trial. In particular, Schepers argued that the officers' entry into the residence and subsequent seizure of the drugs from his residence violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

At the hearing, Deputy Anderson testified that he had attended several courses regarding the various methods of methamphetamine manufacture. Deputy Anderson had seen several active methamphetamine laboratories, all of which involved the odor of ammonia and other chemicals.

Deputy Anderson also testified that he had been involved in various methamphetamine arrests and had noticed a strong chemical odor on each occasion. Deputy Anderson acknowledged that these laboratories were volatile, could explode, and posed a danger to persons and animals that might be nearby. He was convinced that,

4

based on his experience, the ammonia odor emanating from Schepers's residence was associated with the manufacture of methamphetamine.

Following arguments on the motion, the trial court determined that "no exigent circumstances existed to excuse a warrantless entry into Schepers's residence." Appellant's App. p. 11. However, the trial court determined that the information the officers obtained combined with the chemical odor associated with the manufacture of methamphetamine they encountered when approaching Schepers's residence gave them probable cause to believe that a crime was being committed. Thus, they were permitted to apply for and execute the search warrant. As a result, the trial court denied Schepers's motion to suppress because, even in the absence of exigent circumstances, "the evidence would inevitably be discovered by the execution of the search warrant." Appellant's App. p. 13-14.

Pursuant to Schepers's request, the trial court certified the matter for interlocutory appeal, and we accepted jurisdiction over this case on April 17, 2013.

## DISCUSSION AND DECISION

### I.  Standard of Review

We review the denial of a motion to suppress in a manner similar to reviewing the sufficiency of the evidence. Clark v. State, 994 N.E.2d 252, 258 (Ind. 2013). We consider only the evidence favorable to the trial court's ruling, along with substantial uncontradicted evidence to the contrary, to decide if that evidence is sufficient to support

the denial. Id. As are the circumstances here, direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal. Id. at 259.

## II. Knock and Talk

Schepers first claims that the evidence seized from his residence should have been suppressed because the officers improperly performed a "knock and talk" procedure. Appellant's Br. p. 5. Schepers argues that the police officers' conduct, including their approach to his residence, was more akin to a "raid" than a "knock and talk procedure." Appellant's Br. p. 5.

In resolving this issue, we note that "absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant." Sugg v State, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013). Law enforcement officers, without a warrant, may approach and knock on a door because "they do no more than any private citizen might do." Kentucky v. King, 131 S.Ct. 1849, 1862 (2011). Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. Sugg, 991 N.E.2d at 607.

In this case, the evidence demonstrated that Deputies Anderson and Miller walked to Schepers's residence and knocked on the door. Deputy Anderson detected the odor of ammonia. Tr. p. 22, 25, 39. Based on his experience and the strong smell of that chemical, Deputy Anderson inferred that a methamphetamine lab was being operated in

the residence, so he opened the door and conducted a limited protective sweep of the house. In our view, no improper conduct occurred here.

As discussed in more detail below, Deputy Anderson ordered the occupants from the house and exigent circumstances existed for them to enter the house and conduct the protective sweep. In short, Schepers's contention that the evidence should have been suppressed because the officers performed an allegedly improper knock and talk procedure when they approached the residence fails.

### III. Improper Search and Seizure

In a related issue, Schepers contends that the evidence should have been suppressed because the deputies' act of opening the door to the residence and "seizing Schepers" constituted an "improper warrantless search under both the Fourth Amendment and Article I, Section 11." Appellant's Br. p. 4. Schepers claims that there were no exigent circumstances that justified the officers' conduct. In other words, Schepers maintains that the police officers should have waited for the issuance of the search warrant prior to entering the residence.

We initially observe that the Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." In general, warrantless searches are "per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions." McIlquham v. State, 992 N.E.2d 904, 908 (Ind. Ct. App. 2013).

A search conducted without a warrant requires the State to prove that an exception to the warrant requirement is "applicable at the time of the search." Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006). One such exception arises as a result of "exigent circumstances," that includes threats to the lives and safety of officers and others and the imminent destruction of evidence. Id. at 937.

Our Supreme Court has determined that probable cause to believe that an occupied residence contains a methamphetamine laboratory—based largely on chemical odors emanating from the residence—presents exigent circumstances permitting a warrantless search for the safety of the occupants. Id. at 939.

Thus, contrary to the trial court's determination, we believe that the police officers in this case had probable cause to believe that Schepers's residence contained a methamphetamine laboratory based not only on the strong odor of ammonia emanating from the residence, but also on the recent bulk purchases of pseudoephedrine that Schepers and his relatives made. Tr. p. 22, 25. Indeed, the evidence showed that Schepers had purchased at least five boxes of pseudoephedrine within a three-day time period. Ex. 1.

As noted above, the deputies detected a strong smell of ammonia that increased as they approached the front door. Id. at 22, 25, 39. Deputy Anderson knew from his training and experience that the odor of ammonia was associated with methamphetamine manufacture. Id. at 37. Deputy Anderson also realized that methamphetamine laboratories were "very" volatile and often exploded, thus resulting in a danger to any

person or animal that might be nearby. Tr. p. 38-39. The police officers also had reason to believe that more people could be inside the residence. Deputy Fleming, who was familiar with Schepers and the residence, did not know whose vehicle was parked outside. And as noted above, the officers heard a lot of "commotion" and people running through the house. Tr. p. 27-28, 30-33, 59-60, 66, 73, 78.

When Schepers exited the residence, he lied to the police officers, stating that no one else was inside. When two more individuals later exited, the officers had no reason to believe that they were the only two individuals remaining inside. Thus, exigent circumstances existed in this instance and the officers were justified in entering Schepers's residence. Holder, 847 N.E.2d at 939.

Similarly, Schepers has failed to establish that the police officers' actions violated Article 1, Section 11 of the Indiana Constitution. "Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." Id. at 966 (quoting Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001)). It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns. Thus, we have observed "that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." Litchfield v. State, 824 N.E.2d 356, 360 (Ind. 2005). The reasonableness of a search or seizure under Section 11 often "turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a

9

violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Id. at 361.

Here, the odor that emanated from Schepers's residence demonstrated that the Litchfield factors—police concern that a violation of law has occurred and the extent of law enforcement needs for protection of the public—"strongly outweigh[ed] the nature and extent of the intrusions" on Schepers. See Holder, 847 N.E.2d at 937-40 (involving an instance where police officers entered the defendant's backyard, sniffed the defendant's cracked basement window, approached, knocked on the back door, and eventually entered the home).

In sum, we conclude that the police officers acted reasonably when they investigated the source of the ammonia odor, knocked on Schepers's door, and later entered his residence. Moreover, the police officers properly seized the evidence that was seized when the search warrant was executed.

We therefore affirm the trial court's denial of Schepers's motion to suppress[1] and remand this case for trial.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

[1] As an aside, we respectfully disagree with the trial court's decision to deny Schepers's motion to suppress in accordance with the inevitable discovery doctrine. The inevitable discovery rule "permits the introduction of evidence that eventually would have been located had there been no error, for in that instance there is no nexus sufficient to provide a taint." J.B. v. State, 868 N.E.2d 1197, 1201 (Ind. Ct. App. 2007). This doctrine does not apply here because we have determined that exigent circumstances existed that justified the officers' actions. Thus, no illegal search occurred. Holder, 847 N.E.2d at 939. Moreover, sufficient evidence existed for probable cause and a search warrant was issued before the police officers seized any of the evidence that was inside the residence.