**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 02 2014, 6:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CINDY A. HYLMAN, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 84A04-1406-CR-245 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1012-FB-4028

December 2, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Cindy Hylman appeals her convictions for Dealing in Methamphetamine,[1] a class B felony, and Maintaining a Common Nuisance,[2] a class D felony. Hylman argues that the trial court erroneously admitted evidence obtained as a result of a warrantless search that, she claims, violated her rights under the United States and Indiana Constitutions. Finding that the search did not violate her constitutional rights, we affirm.

FACTS

On December 10, 2010, Terre Haute Police Officers Phillip Ralston and Brent Long were conducting surveillance of a Terre Haute residence.[3] Officer Ralston observed four individuals enter the residence, remain inside for a brief period of time, and then leave. While Officer Ralston spoke with two of the individuals who had left the residence on foot, Officer Long initiated a traffic stop on a vehicle carrying the other two people who had entered and left the residence. A passenger in the vehicle told Officer Long that there was a strong chemical odor "like nail polish remover" in the residence that caused her to feel nauseated and that the other two people who had left the residence were "leaving to obtain anhydrous ammonia." Supp. Tr. 18, 19; Supp. Tr. Ex. 9.

Following the traffic stop, the officers returned to the residence and exited their police vehicles. They crossed the sidewalk and approached the residence. Before they reached the front porch, Officer Ralston detected a strong smell of anhydrous ammonia

---

[1] Ind. Code § 35-48-4-1.1

[2] I.C. § 35-48-4-13.

[3] Officer Long was killed in the line of duty in July 2011.

2

emanating from the residence. Anhydrous ammonia is used in the manufacture of methamphetamine. It is hazardous if it comes into contact with the skin and can be fatal if inhaled. Furthermore, anhydrous ammonia creates a volatile situation when combined with other hazardous chemicals to manufacture methamphetamine. To Officer Ralston's knowledge, there is no legitimate reason to have anhydrous ammonia in a residence in a metropolitan area such as Terre Haute. As Officer Ralston approached the front porch, the smell of anhydrous ammonia intensified and made him feel nauseated.

The officers knocked on the door and announced their presence as police officers. No one answered the door, but Officer Ralston heard the banging of metal and a female voice telling others that the police were outside. After receiving no response to the knock and still detecting the odor of anhydrous ammonia, the officers entered the residence. When the officers entered the residence, the smell of anhydrous ammonia was "overwhelming." Supp. Tr. p. 31. The officers found Hylman and two other individuals inside the residence, and took all three people into custody.

While inside the apartment, the officers observed the following items used in the manufacture of methamphetamine in plain view: Coleman fuel, iodized salt, an HCL generator, a binder with a white powdery substance, a makeshift exhaust system containing a pink residue, used and unused coffee filters, a respirator, a clear liquid in a pot on the stove, several glass smoking pipes, liquid heat, a coffee grinder, plastic pitchers and funnels, digitals scales, and pseudoephedrine pills. None of this evidence

3

was seized, and the apartment was not searched for evidence until a search warrant was obtained.

On December 14, 2010, the State charged Hylman with class B felony dealing in methamphetamine, class D felony possession of chemical reagents with intent to manufacture, and class D felony maintaining a common nuisance. Hylman filed a motion to suppress evidence resulting from the warrantless entry of the officers into her residence, which the trial court denied following a hearing on May 8, 2012. A bench trial took place on January 24 and February 28, 2014, and the trial court found Hylman guilty as charged. The trial court merged the first two counts and imposed a six-year suspended sentence for dealing in methamphetamine and a six-month suspended sentence for maintaining a common nuisance, to run concurrently. Hylman now appeals.

DISCUSSION AND DECISION

Hylman's sole argument on appeal is that the trial court erroneously admitted evidence seized as a result of the officers' warrantless entry into her residence. Specifically, Hylman argues that the entry and subsequent search violated her rights under the United States and Indiana Constitutions.

Hylman proceeded to trial after the trial court denied her motion to suppress this evidence, where she renewed her objection to the admission of evidence. Inasmuch as direct review of the denial of a motion to suppress is proper only when the defendant files an interlocutory appeal, Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013), Hylman's appeal on this issue is best framed as a challenge to the admission of the evidence at trial.

4

The admission of evidence at trial is a matter left to the discretion of the trial court. Id. at 259-60. We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. Id. at 260.

As a general matter, "[t]he production of methamphetamine introduces a high risk of explosion and fire." Holder v. State, 847 N.E.2d 930, 939 (Ind. 2006). The manufacture of methamphetamine, "by its very nature, cannot be committed without creating a substantial risk that someone will be killed." Hatcher v. State, 762 N.E.2d 170, 173 (Ind. Ct. App. 2002). Officer Ralston testified that anhydrous ammonia is one of the chemicals used in the manufacture of methamphetamine, that it creates a volatile situation when combined with the other hazardous chemicals used in the manufacturing process, that it is hazardous and harmful if it comes into contact with skin, and that it can be fatal if inhaled. Furthermore, Officer Ralston testified that there is no legitimate reason to have anhydrous ammonia—a chemical used in crop production on farms—in a residence in Terre Haute.

Turning first to the Fourth Amendment to the United States Constitution, we note that as a general rule, warrantless searches are per se unreasonable, subject to a few narrow exceptions. Holder, 847 N.E.2d at 935. The State bears the burden of proving that one of the exceptions applies. Id. One such exception occurs when there are "exigent circumstances," including threats to the lives and safety of officers and other citizens. Id. at 937. Our Supreme Court has held that if there is probable cause to believe

5

that an occupied residence contains a methamphetamine laboratory, then exigent circumstances exist to permit a warrantless search of the residence to ensure the safety of the occupants. Id. at 939.

In this case, an individual who had been inside the residence reported that there was a strong, nauseating odor inside the residence and that two people who had left were leaving to get more anhydrous ammonia. Officers Ralston and Long then drove to the residence, exited their vehicles, and began approaching the residence. Before they even reached the front porch, Officer Ralston detected a strong smell of anhydrous ammonia. As he got closer to the residence, the smell intensified and made him feel nauseated. Officer Ralston knew, based on his experience, that anhydrous ammonia is a component of the methamphetamine manufacturing process and that there is no legitimate reason to have that chemical in a residence in a metropolitan area. We find that these circumstances constituted probable cause to believe that the residence contained a methamphetamine laboratory. And when the officers knocked on the door, they heard people inside, so they knew that the residence was occupied. Under these circumstances, exigent circumstances were present and the officers did not run afoul of the Fourth Amendment by entering the residence without a warrant to ensure the safety of the individuals inside.

Turning next to Article 1, Section 11 of the Indiana Constitution, we note that

> [t]he reasonableness of a search or seizure turns on a balance of (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or

seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs.

Montgomery v. State, 904 N.E.2d 374, 381-82 (Ind. Ct. App. 2009). Our Supreme Court and this Court have held that where there is reason to believe that a residence contains an active methamphetamine lab and that there are people inside the residence, a warrantless entry to search for and remove any people is reasonable under Article 1, Section 11. Holder, 847 N.E.2d at 941; VanWinkle v. State, 764 N.E.2d 258, 267 (Ind. Ct. App. 2002). As noted above, in this case, the officers had reason to believe that there was an active methamphetamine lab inside an occupied residence. Consequently, their warrantless entry into the residence to ensure the safety of the individuals inside did not violate the Indiana Constitution.

The judgment of the trial court is affirmed.

VAIDIK, C.J., and RILEY, J., concur.