## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 07 2018, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory Bowes
Greg Bowes Legal Services, P.C.
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alexander Zschunke,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 7, 2018

Court of Appeals Case No.
18A-CR-902

Appeal from the Brown Circuit
Court

The Honorable Judith A. Stewart,
Judge

Trial Court Cause No.
07C01-1709-F5-578

**Crone, Judge.**

# Case Summary

[1] Alexander Zschunke appeals his convictions for level 5 felony possession of methamphetamine, level 6 felony unlawful possession of a syringe, and class C misdemeanor possession of paraphernalia, and his adjudication as a habitual offender. He argues that the trial court's denial of his motion to exclude evidence that the State disclosed the day before trial was improper because it forced him to choose between a speedy trial and a fair trial. He also challenges the sufficiency of the evidence supporting his convictions. We conclude that he abandoned his speedy trial request, he received a fair trial, and the evidence is sufficient to support his convictions. Therefore, we affirm.

# Facts and Procedural History

[2] The facts supporting the verdicts show that on September 21, 2017, at approximately 8:07 a.m., Nashville Police Officer Tim True was dispatched to a private parking lot on Old School Way regarding a suspicious silver Blazer. Officer True, who was not in uniform, parked his car away from the lot and walked south on Old School Way. As he passed the parking lot, he observed a man, later identified as Zschunke leaning in the Blazer's passenger-side front window. Zschunke was wearing a red hat, a red t-shirt, khaki pants, black shoes, and a black backpack. Officer True continued walking to a public restroom just south of the parking lot. He attempted to enter the restroom, but the door was locked. He walked back north on Old School Way and observed Zschunke talking to the driver of the Blazer. Officer True saw Nashville Police Chief Ben Seastrom pull up to the parking lot guard house. He also saw

Zschunke, wearing the black backpack, walk south toward Pittman House Lane, which is across from the public restroom. Tr. Vol. 3 at 79.[1] Chief Seastrom and Officer True spoke to two of the Blazer's occupants, who provided information leading to Zschunke's identification. *Id.* at 81.

[3] After the Blazer departed, the officers remained in the parking lot, and Chief Seastrom saw a man wearing a red hat and red shirt, but without a black backpack, walk from Pittman House Lane toward the public restroom and go inside. *Id.* 154. Officer True walked toward Pittman House Lane. Chief Seastrom remained in the parking lot and while there did not see anyone else go in or out of the public restroom.

[4] As Officer True walked toward Pittman Lane, he observed the restroom attendant, whom he knew, exit the mechanical room between the men's and women's restrooms, get in her car, and drive away. It was the attendant's habit to clean the bathrooms, empty the trash cans, and replace the trash can liners in the evening, and open the restroom in the mornings between 8:15 and 9:00 a.m. Officer True also observed a truck pull in and "[s]omebody exit[] the truck, walk[] towards the restrooms and then moments later walk[] back and [leave] in the truck." *Id.* at 106.[2] Officer True did not see whether that individual went in the restroom. *Id.* at 115, 122. Officer True walked down Pittman House Lane

---

[1] The transcript volumes are paginated separately as required by Indiana Appellate Rules Appendix A, but the table of contents does not reflect the separate pagination.

[2] It is not clear from the transcript where the truck pulled in or where the individual walked because Officer True showed the jury these locations by pointing at a map. Tr. Vol. 3 at 107.

away from the restroom and discovered a black backpack under a bench near the road. While on Pittman House Lane, Officer True estimated that he lost visual contact with the public restroom for two or three minutes. *Id.* at 87.

[5] Chief Seastrom drove his vehicle to Pittman House Lane and met Officer True near the bench. *Id.* at 86. Brown County Sheriff's Department Officer Andrew Eggebrecht also arrived to assist. Officer True walked to the restroom to verify whether Zschunke was inside. Chief Seastrom estimated that five or six minutes passed between the time he lost sight of the restroom and when Officer True walked back to the restroom. *Id.* at 156. Chief Seastrom and Officer Eggebrecht opened the black backpack and discovered a digital scale with a white powder on it, clothing, hygiene items, and sunglasses.[3] *Id.* at 108, 156-7. Based on his training and experience, Officer Eggebrecht believed that the powder's color and consistency were consistent with methamphetamine. *Id.* at 200. They returned all the items to the backpack and took it to Chief Seastrom's truck, from which they could observe the public restroom and wait for Officer True. *Id.* at 159. While waiting, they did not see anyone go in or out of the restroom. *Id.* at 160.

[6] Meanwhile, Officer True entered the restroom and observed a person in the first stall wearing khaki pants and black tennis shoes. Officer True washed and dried his hands and returned to Chief Seastrom and Officer Eggebrecht. About

---

[3] The State asserts that Zschunke's ID was found in his black backpack, but the record does not support that assertion. Tr. Vol. 3 at 166-67, 168-70.

eight to ten minutes later, they saw Zschunke come out of the bathroom wearing a black shirt and khaki pants and no hat.[4] *Id.* at 106. Officer True called to Zschunke to come over to the officers, and he complied. *Id.* at 89. The officers observed that Zschunke was "sweating profusely," and at Zschunke's trial Officer True testified that increased body temperature is an early sign of methamphetamine use. *Id.* at 128, 161.

[7]   While Zschunke remained with Chief Seastrom, Officer True returned to the restroom and observed a red hat on the counter and a black and gray bandana on the toilet paper dispenser in the bathroom stall that had been previously occupied. Officer True testified that bandanas are often used as tourniquets to expose veins. *Id.* at 91. Officer True also discovered "an alcohol prep pad" and an orange syringe cap in the trash can and two bags of syringes and sharps (needles) containers underneath the trash can liner. *Id.* at 92-93. The single orange syringe cap matched the orange syringe caps in the bags. One of the bags of syringes was opened; it was missing some syringes and contained another clear plastic bag with a crystal. Testing revealed that the crystal was 3.22 grams of methamphetamine. *Id.* at 96.

[8]   The State charged Zschunke with level 5 felony possession of methamphetamine, level 6 felony unlawful possession of a syringe, and class C misdemeanor possession of paraphernalia, and alleged that he was a habitual offender. On December 1, 2017, Zschunke filed a motion for an early trial

---

[4] Officer True believed that the red shirt was in one of Zschunke's pants pockets. Tr. Vol. 3 at 113.

pursuant to Indiana Criminal Rule 4(B), and the trial court issued an order granting his motion and setting his trial for February 21, 2018. The date was outside the seventy-day period provided by Criminal Rule 4(B), but Zschunke did not object.

[9] From February 21-23, 2018, Zschunke's jury trial was held. The day before trial, the prosecutor became aware of 172 recordings of Zschunke's jail conversations and notified Zschunke's attorney. On the morning of trial, Zschunke filed a motion in limine to exclude the recorded conversations. The trial court held a preliminary hearing, at which Zschunke argued that the recordings should be excluded because he did not know what was in the recordings and had not had a chance to prepare any defense. Tr. Vol. 2 at 31. The prosecutor explained that he had not yet listened to the recordings, but that Brown County Sheriff's Department Detective Paul Henderson had informed him that they revealed Zschunke taking ownership of the black backpack and attempting to coordinate the testimony of witnesses. The prosecutor argued that the recordings were newly discovered evidence and that, barring malfeasance, the appropriate remedy was a continuance rather than exclusion of the evidence. *Id*. at 33-34. The trial court offered either to continue the trial to allow Zschunke additional time to respond to the recordings, or if Zschunke was confident that he did not want a continuance, "they could get started and address admissibility of different aspects of it when it's offered." *Id*. at 65-66. Zschunke decided to go forward with trial. *Id*. at 66. He was afforded an

opportunity to question Detective Henderson, listen to the recordings, and make objections. Only portions of two conversations were ultimately admitted.

[10] The jury found Zschunke guilty as charged and that he was a habitual offender. The trial court sentenced him to an aggregate term of ten years. This appeal ensued.

## Discussion and Decision

## Section 1 – Zschunke was not forced to choose between a speedy trial and a fair trial.

[11] Zschunke contends that the trial court's denial of his motion to exclude the evidence of his recorded jail conversations improperly forced him to choose between a speedy trial and a fair trial. As for any speedy trial rights, we note that Zschunke filed his motion for an early trial pursuant to Indiana Criminal Rule 4(B), which provides, "If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion." Zschunke concedes that the seventy-day period ended February 9, 2018, and he did not object when the trial court set the trial date outside that period. It is well established that a defendant's failure to object to a trial setting outside the seventy-day period constitutes an abandonment of the request for a speedy trial. *See McKay v. State*, 714 N.E.2d 1182, 1189 (Ind. Ct. App. 1999) ("McKay's failure to object to the trial setting … ten days beyond the seventy-day period, … constituted an abandonment of his request for a speedy trial."); *Townsend v.*

*State*, 673 N.E.2d 503, 506 (Ind. Ct. App. 1996) (defendant abandoned early trial motion by failing to object to trial setting scheduled just one day outside seventy-day period); *James v. State*, 622 N.E.2d 1303, 1306 (Ind. Ct. App. 1993) (same). Accordingly, we conclude that Zschunke abandoned his request for a speedy trial by acquiescing to the setting of the trial beyond the seventy-day limit.

[12] Even if we were to conclude that Zschunke did not abandon his speedy trial request, we are unpersuaded that he was deprived of a fair trial. We observe that

> [t]rial courts have broad discretion in dealing with discovery violations by the State in the alleged late disclosure of evidence to the defense. We may reverse the manner in which the trial court deals with such an alleged violation only for an abuse of that discretion involving clear error and resulting prejudice.

*Alcantar v. State*, 70 N.E.3d 353, 356 (Ind. Ct. App. 2016). Generally, "the proper remedy for a discovery violation is a continuance." *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). However, "exclusion of evidence may be appropriate where the violation 'has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial.'" *Dye v. State*, 717 N.E.2d 5, 11 (Ind. 1999) (quoting *Kindred v. State*, 524 N.E.2d 279, 287 (Ind. 1988)), *cert. denied* (2000).

[13] Zschunke did not argue to the trial court, nor does he argue on appeal, that the State flagrantly or deliberately violated the discovery rules. Further, Zschunke

cannot show that his right to a fair trial was impaired. Out of the presence of the jury, Zschunke was given the opportunity to cross-examine Detective Henderson and listen to the recorded conversations. Ultimately, only portions of two conversations were admitted, and on appeal Zschunke draws our attention solely to the September 25, 2017 conversation, during which he states that his backpack was seized as evidence. However, the only objection to this evidence that Zschunke's counsel raised at trial was that it was cumulative of other evidence. Tr. Vol. 3 at 246. Because the evidence was cumulative, Zschunke suffered no prejudice. *See Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004) ("Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted."). We find no abuse of discretion in the trial court's denial of Zschunke's motion to exclude evidence regarding the recordings of his jail conversations.

## Section 2 – The evidence is sufficient to support Zschunke's convictions.

[14] Zschunke challenges the sufficiency of the evidence supporting all three convictions. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the verdict and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of

fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id*.

[15] We begin by addressing Zschunke's convictions for possession of methamphetamine and unlawful possession of a syringe because one of Zschunke's sufficiency claims applies to both. To convict Zschunke of level 5 felony possession of methamphetamine, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed methamphetamine within five hundred feet of school property. Ind. Code § 35-48-4-6.1(a), -(b)(2). To convict Zschunke of level 6 felony unlawful possession of a syringe, the State was required to prove beyond a reasonable doubt that he knowingly with intent to violate the Indiana Legend Drug Act or an offense described in Indiana Code Chapter 35-48-4 possessed or had under his control a hypodermic syringe. Ind. Code § 16-42-19-18(a), -(b). Zschunke argues that the State failed to prove the element of possession beyond a reasonable doubt. Specifically, he argues that the State failed to prove that he was the person who left the methamphetamine and syringes in the restroom.

[16] The evidence shows that the restroom attendant cleaned the restrooms, emptied the trash cans, and replaced the trash can liner in the evening and unlocked the restrooms between 8:15 and 9:00 in the morning. When Officer True first went to the restroom, it was locked. Chief Seastrom saw Zschunke enter the restroom. Officer True saw the restroom attendant leave the janitor's room, get in her car, and depart. This supports a reasonable inference that Zschunke entered the restroom shortly after it was opened and that the trash can was

empty at that time. Chief Seastrom watched the restroom for two or three minutes and did not see anyone go in or out. Officer True returned to the restroom and observed a person wearing Zschunke's tan pants and black shoes in the only occupied bathroom stall. Officer True then joined Chief Seastrom and Officer Eggebrecht, and they waited within clear view of the restroom, during which time no one entered or exited. Tr. Vol. 3 at 88, 159. When Zschunke did exit, he was antsy and "sweating profusely," which Officer True recognized as a sign of methamphetamine use. *Id*. at 128. After Zschunke exited, Officer True discovered a gray and black bandana in the stall Zschunke had occupied, his red hat on the counter, and an alcohol swab, two packages of syringes, sharps containers, and methamphetamine in the trash can. From this evidence, a reasonable trier of fact could have concluded that Zschunke put the methamphetamine and syringes in the trash can.

[17] Nevertheless, Zschunke directs us to evidence that the police did not have the restroom in sight from anywhere between two to six minutes and that Officer True at one point observed a man in a red pickup truck drive up to the restroom and walk toward the restroom. According to Zschunke, the State failed to exclude the reasonable hypothesis that the man in the red truck placed the contraband in the trash can. However, the jury was instructed, "In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." Appellant's App. Vol. 2 at 84. The jury heard the evidence and determined that Zschunke's hypothesis was not

reasonable. Zschunke conflates the standard that the jury is required to apply in determining guilt at trial with the standard this Court applies in determining the sufficiency of the evidence on appeal. *See Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (In reviewing sufficiency of evidence to support conviction, "[i]t is … not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'") (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). His argument is merely a request to reweigh the evidence, which we must decline.

[18] Regarding his unlawful possession of a syringe conviction, Zschunke also argues that the State failed to prove that he possessed the syringe *with the intent* to violate the Indiana Legend Drug Act or an offense described in Indiana Code Chapter 35-48-4. Zschunke contends that the State failed to determine whether he had track marks on his arms and used no fingerprint or DNA analysis to tie the syringes to him. In *Berkhardt v. State*, 82 N.E.3d 313, 317 (Ind. Ct. App. 2017), another panel of this Court reviewed our case law regarding sufficient evidence of unlawful intent and observed, "Cases in which courts have found sufficient evidence of unlawful intent generally include evidence of prior narcotics convictions; admissions to drug use; the presence of illegal drugs or drug residue on the paraphernalia; track marks on the defendant's arms or hands; or withdrawal symptoms showing recent drug use." Here, there was an opened bag of syringes; syringes were missing from the bag, and there was methamphetamine in the bag. A single orange cap that matched that of the bagged syringes was found in the trash can, indicating that a syringe had been used and discarded. There was a bandana in the bathroom stall occupied by

Zschunke, which could have been used as a tourniquet to inject drugs, and Zschunke exhibited signs of methamphetamine use when he exited the restroom. From this evidence, a reasonable jury could conclude that Zschunke possessed the syringes with the intent to use them unlawfully.

[19] Last, we address Zschunke's conviction for class C misdemeanor possession of paraphernalia. To convict Zschunke of that crime, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed an instrument, device, or object used for testing the strength, effectiveness, or purity of a controlled substance. Ind. Code § 35-48-4-8.3(b)(2); Appellant's App. Vol. 2 at 47. The offense encompasses knowing or intentional possession of an instrument, device, or object used to measure the weight of a controlled substance for purchase. *McIlquham v. State*, 992 N.E.2d 904, 911 (Ind. Ct. App. 2013), *aff'd in relevant part*, 10 N.E.3d 506, 510-11 (Ind. 2014). Zschunke contends that the State failed to identify the powder on the digital scale, and therefore failed to prove that the scale was intended to be used with a controlled substance. He notes that Chief Seastrom attempted to conduct a field test on the powder to determine whether it was methamphetamine but was unable to gather a sufficient sample. Tr. Vol. 3 at 179. He also asserts that the State may have contaminated the scale and confused the source of the powder because at some point Officer True used the scale to weigh the crystal from the open syringe bag recovered from the restroom trash can. *Id*. at 109.[5] We easily

---

[5] The record does not indicate exactly when Officer True used the digital scale.

dispense with his second assertion because the digital scale had white powder on it when Chief Seastrom and Officer Eggebrecht initially took it from the backpack, which was before Officer True even discovered the crystal. As to the identity of the white powder, Officer Eggebrecht testified that it had a texture and consistency that was consistent with methamphetamine, and significantly, Zschunke possessed methamphetamine and an open package of syringes and showed physical symptoms of methamphetamine use. Therefore, the State introduced evidence from which a reasonable jury could conclude that Zschunke used the digital scale to weigh his methamphetamine. Based on the foregoing, we conclude that Zschunke's convictions are supported by sufficient evidence. Accordingly, we affirm.

[20] Affirmed.

Najam, J., and Pyle, J., concur.